UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **CHARLES GRAHAM aka CHARLES STEVENSON and RUSSELL L. DAVIS,** on behalf of themselves and all others similarly situated, | )<br>)<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| v. | ) No. _____ |
| **TONY C. PARKER,** Commissioner, Tennessee Department of Corrections; **DR. MARINA CADRECHE,** Assistant Commissioner of Rehabilitative Services, Tennessee Department of Corrections; and **DR. KENNETH WILLIAMS,** Medical Director, Tennessee Department of Corrections, in their official capacities, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| **Defendants.** | ) |

---

**CLASS ACTION COMPLAINT**

---

Plaintiffs Charles Graham aka Charles Stevenson and Russell L. Davis bring this complaint against Defendants Tony C. Parker, Dr. Marina Cadreche, and Dr. Kenneth Williams in their official capacities as Commissioner, Assistant Commissioner, and Medical Director, respectively, of the Tennessee Department of Corrections, for declaratory and injunctive relief on behalf of themselves and all others similarly situated, and would allege as follows:

**INTRODUCTION**

1. Plaintiffs bring this action under 42 U.S.C. § 1983 to uphold the Eighth and Fourteenth Amendments of the United States Constitution. Plaintiffs and members of the putative class are inmates in the custody of the Tennessee Department of Corrections ("Department") who are infected with the Hepatitis C virus ("HCV"). Hepatitis C is a viral

1

infection that causes liver inflammation, leading to a host of medical complications, and ultimately death. Despite knowledge of Plaintiffs' HCV infection and the fatal effects of the disease, the Department has consistently and systematically denied them treatment. The Department's HCV policies, written and unwritten, and its implementation of those policies constitute deliberate indifference to the suffering of Plaintiffs and the putative Class and violates their right to be free of cruel and unusual punishments as guaranteed by the U.S. Constitution.

## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a).

3. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) because Defendants have their official residence in this district.

## PARTIES

4. Plaintiff Russell L. Davis is an inmate in the Department's Northwest Correctional Complex, 960 Negro Graveyard Road/State Route 212, Tiptonville, Tennessee 38079. He was diagnosed with HCV in 2009 while an inmate in another Department facility. Since that time, Defendants have refused to provide Mr. Davis with any form of treatment for his illness, despite his repeated requests for medical care.

5. Plaintiff Charles Graham aka Charles Stevenson[1] is an inmate in the Department's Hardeman County Correctional Facility, 2520 Union Springs Rd, Whiteville, Tennessee 38075. He was diagnosed with HCV in 2005 while an inmate in another Department facility. Since that time, Defendants have refused to provide Mr. Stevenson with any form of treatment for his illness, despite his repeated requests for medical care.

6. Defendant Tony C. Parker is the Department's Commissioner. In that capacity,

---

[1] Plaintiff's legal name is Charles Graham. However, his name appears as Charles Stevenson in most of the Department's internal documentation. For ease of reference, Plaintiff will refer to himself as "Charles Stevenson" in the remainder of the Complaint.

he has authority over all aspects of the management and governance of all Tennessee penitentiaries, including the provision of constitutionally adequate medical, mental health, and dental care for all prisoners committed to the custody of the Department. The Department's primary business location is 320 Sixth Avenue North, Nashville, Tennessee 37243, and Defendant Parker serves in his official capacity at this location.

7. Dr. Marina Cadreche is the Department's Assistant Commissioner of Rehabilitative Services. In that capacity, she has authority over all aspects of health care for inmates in the Department's custody. The Department's primary business location is 320 Sixth Avenue North, Nashville, Tennessee 37243, and Defendant Cadreche serves in her official capacity at this location.

8. Dr. Kenneth Williams is the Department's Medical Director. In that capacity, he has authority over various aspects of medical care for inmates in the Department's custody. Specifically Dr. Williams has direct control over the TDOC Advisory Committee on HIV and Viral Hepatitis Prevention and Treatment ("TACHH"), which works to establish and update Department policies on HCV treatment in Tennessee penitentiaries. The Department's primary business location is 320 Sixth Avenue North, Nashville, Tennessee 37243, and Defendant Williams serves in his official capacity at this location.

9. In their official and related capacities, Defendants act under color of state law. *See* Tenn. Code Ann. § 4-6-101 *et seq*.

**FACTS**

10. Defendants commit themselves to offering quality health care to inmates that meets "the community standard of care." They claim to do so through "performance-based monitoring," which involves "extremely detailed and exhaustive reviews of offender treatment

and health records." *See* Offender Health Care, Tennessee Department of Corrections, *available at* https://www.tn.gov/correction/topic/The Department-rehabilitation-offender-health-care#sthash.4lktEXst.STBmeP4D.dpuf (last reviewed July 13, 2016).

11. In reality, Defendants ignore the medical needs of Plaintiffs and Class members in order to save costs. Defendants' written policies for HCV diagnosis, assessment and treatment utilize outdated standards of care and normalize the practice of refusing treatment for unjust and medically unsound reasons. Defendants' unwritten policies, customs, and actual practices in diagnosing and treating HCV fall short even of the outdated and unreasonable written protocols.

12. Prior to 2013, HCV infection was treated with interferons, which are proteins that work on the immune system. Interferon treatment lasts 48 weeks, has a low rate of effectiveness, and causes debilitating side effects similar to chemotherapy treatment.

13. The medical community has achieved amazing advances in the treatment of HCV infection in the last few years. In late 2013, the U.S. Food and Drug Administration approved the use of direct-acting anti-viral drugs ("DAAs") for the treatment of HCV infection. DAA treatment lasts 12 weeks, has a high rate of effectiveness in curing HCV infection without the harsh side effects of interferon treatment, and is effective at any stage of the disease.

14. In order to guide medical professionals in the rapidly developing world of HCV treatment, the American Association for the Study of Liver Disease ("AASLD") and the Infectious Disease Society of America ("IDSA"), the two relevant professional medical associations concerned with the study of HCV, formed the HCV Guidance Panel in mid-2013. The AASLD/IDSA HCV Guidance Panel sets standards for the diagnosis and treatment of HCV infection. Those standards are widely accepted throughout the medical community as the current standard of care and result in a 90+% cure rate depending on genotype and other factors.

15. In its first report, issued in March 2014, the HCV Guidance Panel stated that the 48-week interferon treatment "has been superseded by treatments incorporating DAAs and should not be used." Recommendations for Testing, Managing and Treating Hepatitis C, March 17, 2014, http://www.hcvguidelines.org/sites/default/files/full_report.pdf, at p. 20.

16. The HCV Guidance Panel has updated its recommendations several times since its initial report to reflect newly approved DAAs entering the market. The current guidance was issued on July 6, 2016 and definitively establishes a 12-week treatment regimen with DAAs as the medically accepted standard of care. Recommendations for Testing, Managing, and Treating Hepatitis C, July 6, 2016, http://hcvguidelines.org/sites/default/files/HCV-Guidance_July_2016_b.pdf. Each iteration of the Panel's guidance has consistently stated that 48-week interferon treatment is "inferior" to DAA treatment and is "not recommended."

17. Defendants are keenly aware of the epidemic levels of HCV infection among inmates in Tennessee and nationally. The Department has faced intense media and legislative scrutiny over the epidemic levels of HCV infection in its facilities during the past 6 months. The Department's current HCV protocol recognizes that HCV is a "silent epidemic" which disproportionately affects "correctional populations." *See* Tennessee Department of Corrections, Chronic HCV Guidance: Recommendations for Testing, Managing, and Treating Hepatitis C (January 1, 2016), attached hereto as Exhibit A (hereinafter the "Protocol"). In March 2016, the Department placed the number of its inmates testing positive for HCV at 3,487, or nearly 1 in 6 prisoners, while conceding that this number is likely far below true infection rates due to a lack of routine testing and inaccurate testing. *See, e.g.*, Letter from Schofield to Tennessee House Finance, Ways and Means Committee, March 9, 2016, attached hereto as Exhibit B. The

5

Department further acknowledges that nearly half of the inmates tested in 2015 for HCV showed positive test results, a statistic that puts the likely number of inmates infected near 10,000.

18. Defendants are also keenly aware of the community standard of care in the treatment of HCV infection in the prison setting. The Department's Protocol references the guidance of the AASLD/IDSA HCV Guidance Panel as well as Federal Bureau of Prisons ("FBOP") guidance, which is consistent with the Guidance Panel's recommendations. Defendants also acknowledge that the Guidance Panel advises treating all HCV positive individuals, a recommendation that has been adopted by the U.S. Department of Veteran's Affairs and Medicare. Tennessee Department of Corrections, Management of Chronic Hepatitis C Virus (HCV), May 20, 2016, attached hereto as Exhibit C (hereinafter "Management Guidance"), at p. 7. Defendants further acknowledge that the FBOP's current policy is to screen all inmates for HCV infection and treat them with DAAs. *See* Management Guidance at p. 8.

19. Despite Defendants' knowledge of the epidemic rates of HCV infection in their facilities and their knowledge of the standard of care for treatment of HCV infection, Defendants fail to provide medically accepted care to the vast majority of HCV+ inmates. In fact, as of May 2016, only eight (8) of the 3,487 diagnosed inmates were receiving treatment with DAAs.

20. Defendants' HCV Protocol establishes an endless loop of procedures and eligibility criteria not based on sound medicine with the end goal of denying inmates treatment. The Protocol establishes a convoluted, multi-step assessment procedure between diagnosis and treatment lasting roughly 45 months. Protocol at pp. 18-20. In practice, that wait time is greatly extended by delays in making appointments, receiving the results of laboratory tests, etc.

21. During this assessment period, a sick inmate risks losing eligibility – and either not receiving treatment or having to start the process over again – for a variety of missteps, none

of which are based on sound medical reasoning.  For example, an inmate who has been disciplined becomes ineligible to continue the process to receive treatment.  So does an inmate who has received a tattoo, who has used drugs or alcohol, or who is generally considered by the Department a behavioral risk.  Inmates who are not capable of giving informed consent and those with certain mental illnesses will be denied treatment.  An inmate who does not understand the multiple pages of technical consent forms will be denied treatment.  *Id*.

22.     Defendants conduct this assessment and provide treatment only at certain approved facilities.  Inmates housed in other facilities are ineligible for treatment.

23.     Further, the Protocol states that an inmate who does not have at least 27 months left on his sentence will be denied treatment.   This policy, in addition to being indifferent to the suffering of sick inmates and arbitrary in light of the 12-week course of treatment, creates the risk of an HCV pandemic among the general population, as HCV positive inmates will be released into the broader Tennessee community and will likely infect others.

24.     Even if an inmate perseveres and is able to receive treatment, the treatment offered by Defendants falls far below community standards of care.  For example, Defendants consider drawing blood to be an appropriate form of HCV treatment.  Defendants also consider provision of the hepatitis B vaccine to be an appropriate form of HCV treatment.  The Protocol specifically contemplates use of interferons, even though those drugs are widely considered "inferior" and are disfavored for treatment of HCV infection.

25.     Defendants have no written policies governing treatment of inmates with DAAs, and instead have intentionally omitted DAA treatment from the Protocol and other policies in order to justify their routine denial of treatment with these life-saving medications.

7

26. The Protocol, as well as the policies, recommendations, and guidance established by Defendants and/or the TACHH, govern the management, diagnosis and treatment of HCV infection in all Tennessee penitentiaries. The Protocol and other policies and practices established by Defendants apply both to the Department and all of its vendors, such as Corrections Corporation of America, Corizon, and Centurion.

27. Plaintiffs have been fighting an uphill battle with Defendants to receive treatment for their HCV infection for years without success.

28. Defendants transferred Plaintiff Davis to DeBerry Special Needs Facility in order for him to receive treatment for his HCV infection in 2013. However, he was subsequently transferred out of DeBerry, without explanation, to a different Department facility that does not offer HCV treatment. Since that time, Defendants have denied Plaintiff Davis treatment, explaining to him that the Department has no protocols in place for HCV treatment.

29. Defendants have also denied Mr. Stevenson treatment, although they have refused to provide an explanation for that denial. Instead, Defendants repeatedly tell Mr. Stevenson to schedule an appointment to assess his medical needs, although assessment never progresses to treatment after his appointments.

30. Defendants' willful indifference to Plaintiffs' disease causes Plaintiffs prolonged physical and mental pain. Plaintiffs are forced to endure the physical effects of HCV, including pain, cramping, and fatigue. Plaintiffs' physical suffering is exacerbated by the mental anguish of knowing that the infection will continue indefinitely and the disease will eventually kill them.

31. Both Plaintiffs suffer from constant fatigue due to their infection. Mr. Davis also suffers from acute symptoms, such as diarrhea, constipation, and gastrointestinal pain. Plaintiffs and potential Class members will suffer irreversible harm, such as liver damage, due to

Defendants' indifference. Many HCV+ inmates have already died from the disease left untreated while in Department custody.

32. Plaintiffs have filed and exhausted all grievance procedures available to them related to Defendants' failure to provide adequate treatment to them for HCV. In the event Plaintiffs' exhaustion efforts suffer from some unknown defect, the relief sought is still warranted absent complete exhaustion to prevent irreparable injury to Plaintiffs and the Class.

## CLASS ALLEGATIONS

33. Plaintiffs bring this claim on behalf of themselves and, pursuant to Fed. R. Civ. P. 23(b)(1) and (b)(2), a class of

> **All persons currently incarcerated in any facility under the supervision or control of the Tennessee Department of Corrections or persons incarcerated in a public or privately owned facility for whom the Tennessee Department of Corrections has ultimate responsibility for their medical care and who have at least twelve weeks or more remaining to serve on their sentences and are either currently diagnosed with Hepatitis C infection or are determined to have Hepatitis C after an appropriate screening test has been administered by The Department of Corrections.**

34. This class of persons shall hereinafter be referred to as the "Inmate Class." Excluded from the Inmate Class are Defendants and any members of their immediate family, as well as immediate family members of the judges.

35. Plaintiffs seek relief from the wrongdoing of Defendants for themselves and for all members of the Inmate Class through Rule 23 of the Federal Rules of Civil Procedure. The putative classes meet the statutory prerequisites of Fed. R. Civ. P. 23(a), as set forth herein.

36. As of May 2016, there were 3,487 known prisoners with Hepatitis C. However, with more than 20,000 inmates currently in Department custody, Plaintiffs believe that the actual

number of individuals infected with HCV could be three times the number of known cases. Therefore, members of the class are so numerous that joinder would be impracticable.

37. The number and identity of putative class members is easily ascertainable through discovery. Any notice to class members could be given through the already-established channels Defendants use to communicate with individuals in their custody.

38. Plaintiffs' claims are typical of the claims of the Class, as Defendants' policies and practices apply to all HCV positive prisoners in Department facilities. Plaintiffs will fairly and adequately represent the interests of all Class members and do not have any interests antagonistic to those of the Class. Plaintiffs have retained counsel with competence and experience in class action and Constitutional litigation.

39. Inmate Class members' claims involve common questions of both law and fact. The facts relevant to this action are limited simply to the evidence of Defendants' written policies and unwritten policies, practices and customs regarding the diagnosis and treatment of HCV infection. The injuries sustained by Plaintiffs and all putative class members flow from a common nucleus of operative facts – Defendants' willful failure to offer adequate medical care. Similarly, this action raises common questions of law regarding the rights of Plaintiffs and Class members to receive adequate medical care and specific contours of Defendants' obligations under the Eighth Amendment of the U.S. Constitution.

40. This action is maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(1) because the number of class members is at least 3,487 and may be as much as three times that amount, and the prosecution of separate actions by individuals would create a risk of inconsistent and varying adjudications, which in turn would establish incompatible standards of conduct for Defendants. Additionally, the prosecution of separate actions by individual members could result

in adjudications with respect to individual members that, as a practical matter, would substantially impair the ability of other members to protect their interests.

41. This action is also maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants' policies and practices that form the basis of this complaint are common to and apply generally to all members of the Inmate Class, regardless of what entity runs the particular facility where an inmate is housed or what entity provides medical care in that facility. All Class members have sustained uniform injury – a lack of adequate medical care – and that injury can be remedied by the Class-wide injunctive and declaratory relief sought.

## CAUSE OF ACTION

### 42 U.S.C. § 1983
### VIOLATION OF THE EIGHTH AMENDMENT

42. Plaintiffs hereby re-allege and incorporate each and every allegation set forth above as if fully set forth herein.

43. The Eighth Amendment to the United States Constitution, made applicable to states by the Fourteenth Amendment, guarantees all citizens, including Plaintiffs and the Inmate Class, the right to be free from cruel and unusual punishments.

44. By their policies and practices described herein, Defendants subject Plaintiffs and the members of the putative Class to a substantial risk of serious harm and ultimately death from inadequate medical care. These policies and practices have been and continue to be implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of the Plaintiffs' and Class members' ongoing deprivation of rights secured by the United States Constitution under the Eighth Amendment.

45. Defendants have been and are aware of all the deprivations complained of herein,

have adopted policies and practices that institutionalize those deprivations, and have been and are deliberately indifferent to the deprivations.

46. Under 42 U.S.C. § 1983, Plaintiffs and the Class are entitled to a declaration that the Defendants' written policies and unwritten policies, customs and practices are unconstitutional and an injunction requiring Defendants to adopt policies and practices consistent with the accepted standard of care for HCV infection and the public interest.

47. Plaintiffs and Inmate Class members have no adequate remedy at law to redress the wrongs suffered as set forth in this complaint. Plaintiffs have suffered and will continue to suffer irreparable injury, both in the form of physical and mental harm and deprivation of Constitutional rights, as a result of the unlawful policies, and practices of Defendants, as alleged herein, unless Plaintiffs Inmate Class members are granted the relief they request.

**WHEREFORE**, Plaintiffs and the Class pray for the following relief:

1. Declaration that the suit is maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(1) and (2);

2. Declaration that the policies and practices of Defendants, and their agents, employees, officials, and all persons acting in concert with them, as described herein, are in violation of the rights of Plaintiffs and members of the Inmate Class under the Eighth Amendment to the U.S. Constitution, which prohibits Defendants from inflicting cruel and unusual punishments under color of state law;

3. Preliminarily and permanently enjoin Defendants, their agents, employees, officials, and all persons acting in concert with them under color of state law, from subjecting Plaintiffs and the Inmate Class to the unconstitutional policies and practices described herein;

4. Order Defendants and their agents, employees, officials, and all persons acting in concert with them under color of state law, to develop and implement, as soon as practical, a plan to eliminate the substantial risk of serious harm that prisoner Plaintiffs and members of the Plaintiff Class suffer due to Defendants' inadequate diagnosis, assessment and treatment of HCV infection. Defendants' plan shall comport with the community standard of care and the advice of medical experts.

5. Award Plaintiffs the costs of this suit, and reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, and other applicable law;

6. Retain jurisdiction of this case until Defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction; and

7. All other relief, legal or equitable, that the Court deems just and proper.

Dated: July 25, 2016

Respectfully submitted,

/s/ Karla M. Campbell
Karla M. Campbell (BPR 27132)
BRANSTETTER, STRANCH
  & JENNINGS, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Phone: (615) 254-8801
Fax: (615) 255-5419
karlac@bsjfirm.com

Thomas H. Castelli (BPR 24849)
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF TENNESEEE
P.O. Box 120160
Nashville, Tennessee 37212
Phone: (615) 320-7142
Fax: (615) 691-7219
tcastelli@aclu-tn.org

13

{005144/16221/00394929.DOCX / Ver.1}
Case 3:16-cv-01954   Document 1   Filed 07/25/16   Page 13 of 14 PageID #: 13

Elizabeth S. Logsdon (BPR 32066)
DISABILITY RIGHTS TENNESSEE
2 International Plaza, Suite 825
Nashville, Tennessee 37217
Phone: (615) 298-1080
Fax: (615) 298-2046
lizl@disabilityrightstn.org