UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHARLES GRAHAM aka CHARLES STEVENSON and RUSSELL L. DAVIS, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TONY C. PARKER, Commissioner, Tennessee Department of Corrections; DR. MARINA CADRECHE, Assistant Commissioner of Rehabilitative Services, Tennessee Department of Corrections; and DR. KENNETH WILLIAMS, Medical Director, Tennessee Department of Corrections, in their official capacities, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> No. 3:16-CV-1954 <br><br> Judge Crenshaw <br> Magistrate Judge Brown |

## PLAINTIFFS' REPLY IN SUPPORT OF
## THEIR MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court's scheduling order, Dkt. 36, Plaintiffs Charles Graham aka Charles Stevenson and Russell Davis ("Named Plaintiffs" or "Plaintiffs"),[1] by their undersigned counsel, hereby reply in opposition to Defendants' Response in Opposition to Plaintiffs' Motion for

---

[1] Defendants' Response contains a footnote asserting that Named Plaintiffs' claims are moot. The undersigned has no knowledge of Plaintiff Davis having completed a 12-week course of DAAs, *see* Response at 1, fn. 1, and Defendants have never produced documents supporting that assertion. Regardless of the mootness of Named Plaintiffs' claims, the claims of the certified Class survive and are ripe for summary judgment. *See Wilson v. Gordon*, 822 F.3d 934, 942 (6th Cir. 2016) ("The general rule is that *once a class is certified,* the mooting of the named plaintiff's claim does not moot the action, the court continues to have jurisdiction to hear the merits of the action if a controversy between any class member and the defendant exists.") (quoting *Brunet v. City of Columbus,* 1 F.3d 390, 399 (6th Cir.1993) (emphasis in original).

Summary Judgment, Dkt. 108 ("Response") and in further support of their Amended Motion for Summary Judgment, Dkt. 92 ("Motion").

I.     **DEFENDANTS ARE PROPER PARTIES**

Defendants begin their opposition to summary judgment by, for the first time in this case, taking issue with being named as defendants. Defendants first note that the Tennessee Department of Corrections ("TDOC" or the "Department") is not a defendant in this case, and take issue with Plaintiffs' references to the Department. Response at 11-12. Defendants next argue that neither Defendant Parker nor Defendant Cadreche "personally participated in any of the asserted conduct that gives rise to Plaintiffs' claims." *Id*. at 12-13. Finally, Defendants appear to concede that Defendant Williams is a proper defendant in this case. *Id*. at 13-14.

These arguments amount to nothing more than a distinction without a difference. Plaintiffs sued Defendants in their official capacities. *See* Dkt. 1 at caption, preamble, ¶¶ 3, 6, 7, 8, 9, and 44. "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). An award of summary judgment to Plaintiffs against any one Defendant is, in every practical sense, an award of summary judgment against the Department.

In an official-capacity suit pursuant to § 1983, the "Plaintiff must show that [the defendant] either participated in the offending conduct or at least implicitly authorized, approved, or knowingly acquiesced in the conduct of his subordinates." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 514 (6th Cir. 2002) (quoting *Comstock v. McCrary,* 273 F.3d 693, 713 (6th Cir. 2001) (quotations omitted)) (where defendant Martin was the Director of the

Michigan Department of Corrections). Demonstrating an official's authority over the subject policy or practice may suffice. *Hardin v. Straub*, 954 F.2d 1193, 1197 (6th Cir. 1992).

In this case, there is no dispute between the parties that Defendant Williams directly "participated in the offending conduct," *i.e.*, the design and implementation of the Department's policies on the treatment of Hepatitis C. Response at 13 ("These facts are undisputed."). In the event the Court finds these policies and practices to have violated the Constitution, Defendant Williams stands in the shoes of the Department for purposes of fashioning injunctive relief. A further finding that Defendants Parker and Cadreche are also liable, while supported by the facts, would be unnecessary.[2]

## II. DEFENDANTS' HCV POLICY RESULTS IN THE KNOWING DENIAL OF TREATMENT TO MANY CLASS MEMBERS

---

[2] Commissioner Parker and Assistant Commissioner Welch, who took over for Assistant Commissioner Cadreche on January 14, 2017, Welch Depo at 9:24-25, both foisted responsibility for the Department's HCV policies and practices on Defendant Williams. *Id.* at 16:01-03 ("Q. So is Dr. Williams ultimately responsible for the medical care in all of the facilities? A. Yes. He's the chief medical officer."); 32:10-12 ("Q. Who makes the ultimate treatment decision for an inmate with hepatitis C? A. The chief medical officer [Williams]."); 38:12-17 ("Q. Who in the Department would have the authority to impanel the TACHH committee? A. Dr. Williams. Q. Who in the Department would have the authority to dissolve the TACHH committee? A. The commissioner."). *See also* Parker Depo at 14:19-23 ("A. The chief medical officer or director of health care, Dr. Williams, being the health care authority for the Department, is in charge of overseeing and developing health care protocols for the Department Of Corrections."); 36:14-22 ("Q. Do you have any knowledge or understanding of how this policy would be used in conjunction with this Chronic HCV Guidance document? A. I would have to review the policy and this guidance to really answer that question. This would be a policy that would fall under the category of responsibilities for Dr. Williams as the chief medical officer as far as the content of the policy and the review process of the policy."); 48:05-15 ("Q. Are there any TDOC policies or practices that would constrain the power of the medical director to develop or implement a treatment protocol? A. Not that I'm aware of. Again, that would be a question for Dr. Williams, who does that. If there's any, he would know; but I'm not aware of any."). Nevertheless, Commissioner Parker concedes ultimately authority over official Department policies. *Id.* at 26:14-18 ("Q. Do you as the commissioner have any role in determining how the grievance policy will work, or do you have final approval over that policy? A. I sign all of the policies for the State of Tennessee."). Plaintiffs attach these deposition excerpts to this Reply brief as Exhibit 1.

Defendants attempt to paint this matter as an unwieldy adequacy of care case, in which 4,000+ HCV-positive inmates ask the Court to pass judgment on their individual treatment plans. In truth, this case simply requires the Court to decide whether the Department's state-wide policies and practices concerning Hepatitis C result in the denial of care to infected inmates.

The relevant facts are not in dispute. Whether it's called a "policy" or "guidance," the 2016 TDOC Chronic HCV Guidance ("HCV Guidance") sets the framework for the existence and operation of the TACHH Committee across the TDOC system. Response at 15. There is no more recent version of the Guidance. *Id*. The HCV Guidance instructs doctors in the prison facilities to monitor HCV+ inmates until the disease has progressed to the point that their "condition warrants closer assessment." *Id*. at 16. At that point, the doctor refers the patient to the TACHH Committee. The Committee decides who should be referred to a specialist for treatment with antiviral medications and who "should not be referred at that time." *Id*. Those referrals are based on "a clinical discussion about each individual patient," but also on cost of the medications and the Department's budget. *Id*. at 16 ("TACHH is responsible for the husbandry of resources…."), 17 (discussing cost considerations). These facts are undisputed.

In other words, the HCV Guidance creates a uniform system in which the Department intentionally interrupts the doctor-patient relationship at the point when the inmate's liver scarring begins to approach cirrhosis – precisely when that individual most needs medical care. Some of those patients will then receive treatment, and others won't – a decision based only on a brief file review and the allocation of scare resources. Viewed through this lens, the TACHH Committee does not provide treatment, it rations treatment. The gravamen of this case is whether this procedure for rationing treatment for the most needy is constitutionally sound.

Plaintiffs, in their Motion, draw the Court's attention to the numerous deaths that result from this policy. Dkt. 93 at 12, 16-17. Defendants, in their Response, do not dispute those deaths, nor could they, because implicit in any system of rationing is the acceptance of a certain number of deaths from those that go untreated. Defendants admit that 56 inmates have died during the relevant period, and that more deaths are unaccounted for. Dkt. 109, ¶ 14. In fact, Defendants maintain an active list of HCV-related deaths within the TDOC system. *Id.*

Defendants attempt to distract the Court with certain "improvements" they have made in their treatment practices since the beginning of this year. This argument is a red-herring. It is undisputed that Defendants created the TACHH Committee and adopted an iteration of the HCV Guidance to govern the Committee in 2015. Response at 16. While the Committee may meet with more frequency today than in 2015,[3] the framework of rationing treatment through the Committee has not changed.

> Q. So you follow this guidance as to assessment of patients; is that correct?
> A. Yes.
> Q. Did you follow this guidance as to monitoring inmates?
> A. Yes.
> Q. And did you follow this guidance as to the treatment of inmates?
> A. No. I'm not involved in the treatment of inmates.
> Q. Who provides treatment to inmates that have hepatitis C?
> A. TACHH committee.

Johnson Depo at 61:17-62:04 (attached hereto as Exhibit 2).[4]

---

[3] As for the number of inmates who have been referred for treatment with medication since the creation of the TACHH Committee in 2015 up until June 2018, Plaintiffs count 216 and Defendants count 219. Dkt. 109, ¶ 12. Plaintiffs accept Defendants' calculation for purposes of this motion. Defendants further state that, of those 219 individuals, 169 were referred for treatment by the TACHH Committee between July 2017 and June 2018. *Id.* Even accepting that number as true, Defendants are still only treating 4% of all 4,357 inmates with HCV. Dkt. 109, ¶ 13. Again, Plaintiffs *do not* advocate for universal treatment; they simply posit that rationing treatment to this extreme does not pass constitutional muster.

[4] Drs. Johnson and Tucker are medical doctors who treat inmates at two TDOC facilities, the

> Q. Did you follow this guidance while you were at West Tennessee State Prison?
> A. Yes.
> Q. Do you still follow this guidance at the women's prison?
> A. Yes.

Johnson Depo at 61:04-09.

> Q. Do you see a date at the bottom of this guidance?
> A. Yes.
> Q. What is that date?
> A. January 1, 2016.
> Q. To your knowledge, is this the most updated version of this guidance?
> A. To my knowledge.
> Q. Do you follow this guidance?
> A. Yes.
> Q. Do you follow this guidance in your practice as of -- currently?
> . . .
> A. Yes.

Tucker Depo at 36:01-15 (attached hereto as Exhibit 3).

It is precisely this continuation of the TACHH Committee process that results in a violation of the 8th Amendment. Plaintiffs have shown an undisputed "pattern of similar constitutional violations" beginning in 2015, coupled with the Department's "continued adherence to an approach that it knows" results in a certain number of deaths per year. *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 738–39 (6th Cir. 2015). Rather than change the procedure for treating HCV, Defendants instead choose to keep a running list of HCV-related deaths. This is the very definition of deliberate indifference – a "conscious disregard for the consequences of its action." *Id.* at 739.

Defendants cite to a number of cases dealing with cost of treatment. Response at 20-21. However, while cost may be a permissible consideration in determining a course of medical care, none of these cases stands for the proposition that cost is a permissible basis for denying care.

---

Women's Prison and Northwest Correctional Complex, respectively.

"This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *see also Vick v. Core Civic*, No. 1:18-CV-00003, 2018 WL 2862861, at *9 (M.D. Tenn. June 11, 2018) (discussing "policies prioritizing cost-savings over inmates' medical treatment"); *Reeves v. Corr. Med. Servs.*, No. 08-13776, 2009 WL 3876292, at *7 (E.D. Mich. Nov. 17, 2009) (citing cases).

Finally, Defendants argue that expert testimony is required to support Plaintiffs' claims. Response at 23-24. However, Defendants again mischaracterize Plaintiffs' claims. Expert testimony would be required if Plaintiffs were claiming inadequate treatment for each of the 4,000+ Class members. *See Santiago v. Ringle*, 734 F.3d 585 (6th Cir. 2013) (regarding adequacy of care provided by prison doctor to plaintiff) (cited in Response at 23). Here, the cruelty of the wholesale denial of medical care resulting from Defendants' policy of rationing medication to those in late stages of liver cirrhosis requires no medical expert's interpretation. Indeed, neither of Defendants' experts offers an opinion on the HCV Guidance, see Exhibits 4 and 5, and so their opinions can offer no guidance on the adequacy of the Department's policy.

## CONCLUSION

For the reasons set forth herein, Plaintiffs, on behalf of themselves and the Class, respectfully ask the Court to **GRANT** Plaintiffs' Motion, finding Defendants liable for the constitutional violations alleged and awarding Plaintiffs and Class members prospective injunctive relief, the precise contours of which will be subject to the Court's factfinding subsequent to a future medical evidentiary hearing. Plaintiffs welcome the opportunity to address the Court's questions in oral argument on the Motion.

Dated: August 10, 2018							Respectfully submitted,

/s/ Karla M. Campbell
Karla M. Campbell (BPR 27132)
BRANSTETTER, STRANCH
   & JENNINGS, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Phone: (615) 254-8801
Fax: (615) 255-5419
karlac@bsjfirm.com

Thomas H. Castelli (BPR 24849)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF TENESEEE
P.O. Box 120160
Nashville, Tennessee 37212
Phone:  (615) 320-7142
Fax:  (615) 691-7219
tcastelli@aclu-tn.org

Stacie L. Price (BPR 03065)
Sherry A. Wilds
DISABILITY RIGHTS TENNESSEE
2 International Plaza, Suite 825
Nashville, Tennessee 37217
Phone: (615) 298-1080
staciep@disabilityrightstn.org
sherry@disabilityrightstn.org

# CERTIFICATE OF SERVICE

I certify that on August 10, 2018, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF and served via the Court's Electronic Filing System to:

Pamela S. Lorch
Tennessee Attorney General's Office
P.O. Box 20207
Nashville, TN 37202-0207
Pam.lorch@ag.tn.gov

Steve Hart
Tennessee Attorney General's Office
P.O. Box 20207
Nashville, TN 37202-0207
Steve.hart@ag.tn.gov

Jim Newsom
Tennessee Attorney General's Office
40 South Main Street, Suite 1014
Memphis, TN 38103-1877
Jim.newsom@ag.tn.gov

*Attorneys for Defendants*

/s/ Karla M. Campbell
Karla M. Campbell