# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **CHARLES GRAHAM, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:16-1954** |
| | ) | **Chief Judge Crenshaw/Brown** |
| **RUSSELL L. DAVIS, ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**To: The Honorable Waverly D. Crenshaw, Jr., Chief United States District Judge**.

## REPORT AND RECOMMENDATION

The Magistrate Judge **RECOMMENDS** for the reasons explained below that plaintiffs' motion to exclude the opinions and testimony of Dr. Martha S. Gerrity, M.D. (Doc. 62) be **DENIED**.

## I. BACKGROUND

Plaintiffs, both of whom are infected with the Hepatitis C Virus (HCV), brought this action on July 25, 2016 alleging that current Tennessee Department of Correction (TDOC) policies have "consistently and systematically" denied them medical treatment in violation of their rights under the Eighth Amendment. The District Judge granted plaintiffs' motion for class certification on May 4, 2017. (Doc. 33) This case is scheduled for a bench trial on December 4, 2018. (Doc. 39)

Plaintiffs filed a motion on June 15, 2018 to "limit the testimony and opinions" of defendants' expert, Martha S. Gerrity, M.D., M.P.H., Ph.D., pursuant to Rule 702, Fed.R.Evid. and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (Doc. 62) Defendants responded in opposition on June 29, 2018. (Doc. 72)

Plaintiffs' motion to exclude was referred to the undersigned for a Report and Recommendation (R&R) on July 5, 2018. (Doc. 85) Thereafter, defendants filed a motion on July

9, 2018 for leave to file a reply.  (Doc. 89)  Defendants' motion was granted on July 16, 2018 (Doc.

96), and their reply filed the same day (Doc. 97).  This matter is now properly before the court.

## II.  ANALYSIS

### A.  The Law Pertaining to Admissibility
### of Expert Witness Testimony

The Federal Rules of Evidence govern the admissibility of expert witness testimony.

*Daubert*, 509 U.S. at 579.  The Rules provide the following with respect to such testimony:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or other specialized
>       knowledge will help the trier of fact to understand the
>       evidence or to determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts of data;
>
> (c)  the testimony is the product of reliable principles and
>       methods; and
>
> (d)  the expert has reliably applied the principles and
>       methods to the facts of the case.

Rule 702, Fed.R.Evid.

The trial court is required under *Daubert* to perform a "gatekeeping" function by assessing

both the reliability and relevance of proffered expert witness testimony.  *Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137, 147 (1999).  For expert testimony to be admissible, the trial court must

find that the expert is qualified, and that her testimony is both reliable and relevant.  *Daubert*, 509

U.S. at 589.  There is no "definitive checklist or test" for admitting expert testimony.  However,

*Daubert* identifies four factors that *ordinarily* bear on the inquiry: 1) whether a theory or technique

can be or has been tested; 2) whether the theory or technique has been subjected to peer review and

2

publication; 3) whether the potential rate of error in using a particular scientific technique and the standards of controlling the technique's operation are known; and 4) whether the theory or technique has been accepted generally in the particular scientific field. *Daubert*, 509 U.S. at 594.

The four *Daubert* factors enumerated above "are neither definitive nor exhaustive and may not be applicable in evaluating the reliability of expert testimony in every case." *Dilts v. United Group Services, LLC*, 500 Fed.Appx. 440, 445 (6th Cir. 2012)(citing *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001)). The *Daubert* factors are flexible, *see Kumho Tire*, 526 U.S. at 138, "and should be applied 'only where they are reasonable measures of the reliability of expert testimony,'" *In re Scrap Metal Antritrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008), *cert denied*, 556 U.S. 1152 (2009)(quoting *Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001)). "[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire*, 526 U.S. at 141; *see Wood v. Wal-Mart Stores Ease, LP*, 576 Fed.Appx. 470. 472 (6th Cir. 2014)(quoting *Kumo Tire*, 526 U.S. at 141).

Not all expert testimony is subject to being evaluated based on the *Daubert* factors. Where "*Daubert* . . . charged trail judges with the responsibility of acting as gatekeepers to exclude unreliable testimony . . . *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science." Rule 702, Fed.R.Evid., *Advisory Committee's notes, 2000 amend*. More particularly, the Advisory Committee's notes in the 2000 Amendment to Rule 702 provide that "[n]othing in this amendment is intend to suggest that experience alone – or experience with other knowledge, skill, training, or education – may not provide sufficient foundation for expert testimony." Rather the correct inquiry is whether that person's "knowledge of the subject mater is such that h[er] opinion will most likely assist the trier of fact in arriving at

the truth." *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981). "Any weakness in . . . methodology will affect the weight that . . . opinion is given at trial, but not its threshold admissibility." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 179 (6th Cir. 2009).

The proponent of expert testimony must prove by a preponderance of the evidence that the testimony is reliable, not that it is scientifically correct. Rule 104(a), Fed.R.Evid.; *Daubert,* 509 U.S. at 593; *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008). When a party challenges the testimony of a proffered expert for insufficient "factual basis, data, principles, methods, or their application . . . the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [her] discipline.'" *Kumho Tire*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). However, the court's gatekeeping function is not intended to supplant the adversary system or the rule of the jury. "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Any doubts regarding the admissibility of an expert's testimony should be resolved in favor of admissibility. Rule 702, Fed.R.Evid. Advisory Committee's notes, 2000 amend ("A review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."). "The gatekeeper doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial." *Deal v. Hamilton Cnty. Bd. Of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004). Finally, abuse of discretion governs a trial court's decision to admit or exclude expert testimony. *Kumho*, 526 U.S. at 152; *see also In re Scrap Metal*, 527 F.3d at 528.

### B. The Parties' Arguments

Plaintiffs characterize their case as follows in their motion to exclude Dr. Gerrity's testimony: "Defendants' official protocols, system-wide policies, and practices related to Hepatitis

4

C diagnosis and treatment [constitute] cruel and unusual," because they "result in an inhumane lack of treatment to inmates suffering from the virus and countless deaths every year." (Doc. 63, p. 1)[1] Plaintiffs argue that their motion to "exclude and/or limit" (Doc. 63, p. 9) Dr. Gerrity's testimony should be granted because she "lacks any training, education, experience or other qualifications related to the treatment of Hepatitis C," and that she has "no knowledge of Defendants' policies or the other facts relevant to the resolution of the constitutional issues in this case." (Doc. 63, p. 2) Plaintiffs argue further that Dr. Gerrity's testimony should be excluded because she "is essentially on retainer for the State in offering medical advice, a position of such conflict as to render her opinion more 'prejudicial than probative.'" (Doc. 63, p. 9)

Defendants argue in their response that plaintiffs' case turns on whether they have violated plaintiffs' constitutional rights because medical care is not provided to infected Tennessee inmates accordance with AASLD (American Association for the Study of Liver Disease) Guidelines (hereinafter "the Guidelines") which requires that direct-acting antiviral (DAA) drugs be administered to patients infected with chronic Hepatitis C virus (HCV) regardless of "the extent of their fibrosis progression." (Doc. 72, p. 1) Defendants argue further that Dr. Gerrity's testimony should be admitted because her testimony does not pertain to the treatment of HCV, but rather that "the . . . Guideline[s] do[] not meet the standards for trustworthy guidelines" because of their:

> poor methodological quality, [their] failure to follow rigorous
> systematic review methods, and [their] failure to adhere to standards
> for recommendations, including having explicit and transparent
> methods for developing recommendations, including having explicit
> and transparent methods for developing recommendations, funding
> guideline development, and managing conflicts of interest . . . .

---

[1]  The page numbers referred to in this R&R are to the page numbers assigned by the originator of the referenced document.  In those instances where the originator neglected to assign page number, the page numbers referred to herein are to those assigned by CMECF.

(Doc. 72, p. 1)  In short, defendants argue that, if the Guidelines are not trustworthy, then there is no violation for not following them.  Finally, defendants argue that Dr. Gerrity is employed by the Center for Evidence-Based Policy, Oregon Health and Sciences University, that the Center works with state Medicaid programs, and that she is not on retainer to the State of Tennessee.

Plaintiffs argue in their reply that the "only issue in this case is whether Defendants' policies and practices related to the treatment of Hepatitis C are medically adequate, or whether they result in care that is indifferent to class members' medical needs."[2,3]  (Doc. 97, p. 4)  They repeat in their reply than Dr. Gerrity's opinion is irrelevant, and that she is not qualified to testify with respect to the treatment for Hepatitis C.[4]

## C.  Analysis of Plaintiffs' Argument Under *Daubert*

Plaintiffs brought this action under 42 U.S.C. § 1983.  To state a claim under § 1983,

---

[2]  The undersigned notes for the record that an initial frivolity review does not appear to have been conducted in this case. Title 28 U.S.C. 1915A mandates an initial frivolity review in cases where prisoners file civil actions whether or not they have paid the filing fee. More particularly, "the district court must first examine a complaint under § 1915A**. . .** before the case may proceed in normal course.  District courts are required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel . . . ." *In re Prison Litigation Reform Act*, 105 F.3d 1131 (memo), 1134 (6th Cir. 1997).

[3]  The undersigned notes in the context of n. 2 above that, if "the only issue" in this case is whether plaintiffs treatment was "medically adequate," then their federal cause of action could be subject to *sua sponte* dismissal because the law is well established that, where a prisoner has received some medical attention but disputes the adequacy of that treatment, the federal courts will not second-guess prison officials' medical judgments and constitutionalize claims which sound in state tort law.  *Darah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017)(quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)).  In other words, if plaintiffs are challenging only the adequacy of their medical care as their statement suggests, then their federal claims are subject to *sua sponte* dismissal with prejudice, but without prejudice to whatever relief they might be entitled in state court.

[4]  Plaintiffs note in their reply that they "did not refer the AASLD Guidelines in their motion for class certification."  (Doc. 97, p. 3)  In the same breath, however, they note that their "expert witness, Dr. Zhi Yao, M.D., ma[de] reference to the AASLD Guidelines as an industry standard" during his May 16, 2018 deposition.  (Doc. 97, p. 3)  A plain reading of the part of Dr. Yao's deposition that plaintiffs filed with their motion shows that it focuses exclusively on the AASLD Guidelines, identified repeatedly as an "evidence-based" standard (Doc. 72-11, pp. 103-05), a far cry from plaintiffs understated characterization of Dr. Yao "mak[ing] reference to the AASLD Guidelines."  Moreover, plaintiff's statement in their reply that Dr. Yao referred to the "AASLD Guidelines as an industry standard" supports the inference that at least part of the theory of plaintiffs' case is that, because defendants do not comply with the Guidelines, *i.e.*, "an industry standard," then they do not comply with the standard of care for treating HCV patients thereby violating plaintiffs' constitutional rights.

6

plaintiffs must allege and show that they were deprived of a right secured by the Constitution or laws of the United States, and that the deprivation was caused by a person or persons acting under color of state law. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *Wershe v. Combs*, 763 F.3d 500, 504-05 (6th Cir. 2014)(citation omitted); *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991). Plaintiffs must satisfy both halves of this two-part test to make a *prima facie* showing under § 1983. The motion to exclude before the court goes to the first part of this two-part test.

The first step in determining whether Dr. Gerrity's testimony is relevant is to determine the purpose of her testimony. Dr. Gerrity executed a 25-page Declaration and Report (hereinafter "the Declaration and Report") under oath on April 2, 2018. In it, she wrote the following regarding the testimony she has been asked to provide:

> **I have been asked to provide an opinion regarding the medical necessity of treating patients with asymptomatic chronic hepatitis C (HCV) with liver fibrosis stages F0-F2; versus advanced stage fibrosis, F3-F4, or symptomatic HCV**; and the quality or trustworthiness of the American Association for the Study of Liver Diseases (AASLD) and the Infectious Diseases Society of America (IDSA) guidelines for HCV entitled, *Recommendations for Testing, Managing, and Treating Hepatitis C* . . . .

(Doc. 72-1, ¶ 4, p. 3)(bold added, italics in the original) The text in bold above appears to be in conflict with defendants' response to the motion to exclude in which they argue that Dr. Gerrity will testify only as to the trustworthiness of the Guidelines. However, when asked during her May 9, 2018 deposition (hereinafter "Dr. Gerrity's deposition" or "her deposition"), "what is it that qualifies you to give this expert report," Dr. Gerrity replied, "because I have expertise in evidence reviews and research methodology and can assess risk of bias in studies." (Doc. 63-1, p. 33) Dr. Gerrity also answered "Yes," when asked to confirm that her "expertise [wa]s related to the evidentiary basis for . . . the treatment of hepatitis C . . . [n]ot about the treatment of hepatis C itself." (Doc. 63-

7

1, p. 33)  Based on foregoing, the undersigned concludes that the text in bold above does not represent a conflict, but merely clarifies that Dr. Gerrity's testimony will address the trustworthiness of Guidelines from the perspective of evidence-based medicine methodology, not from the clinical perspective of treating HCV.

The undersigned turns next to whether the proffered expert testimony is admissible.  The first question to that end is whether Dr. Gerrity is qualified to provide the testimony at issue.

The Declaration and Report and Dr. Gerrity's *curriculum vitae*[5] show that she received a Bachelor of Science Degree (B.S.) in Medical Science from Northwestern University in 1978, and graduated with a Doctor of Medicine (M.D.) from the Northwestern University Medical School in 1980.  (Doc. 72-1, ¶ 1 (Table), p. 1; Doc. 72-2, ¶ II, pp. 1-2 of 35)  Dr. Gerrity also has a Masters of Public Health (M.P.H.) from the Department of Epidemiology, School of Public Health, University of North Carolina, and a Ph.D. in Educational Psychology, School of Education also from the University of North Carolina.  (Doc. 72-1, ¶ 1 (Table), p. 1; Doc. 72-2, ¶ II, p. 2 of 35)  Dr. Gerrity was a Fellow in the Robert Wood Johnson Foundation Clinical Scholars program at the University of North Carolina from 1985 to 1987 where she studied research methods, and was elected to Fellowship of the American College of Physicians in 1998.  (Doc. 72-1, ¶ 1 (Table), p. 1, ; Doc. 72-2, ¶ II, pp. 2, 6, 21 of 35)

 The Declaration and Report shows that Dr. Gerrity is an "academic general internist" and a Professor of Medicine in the Department of Medicine at the Oregon Health & Science University (OHSU) School of Medicine in Portland, Oregon.  (Doc. 72-1, ¶ 1, pp. 1-2 of 25)  Dr. Gerrity's *curriculum vitae* shows that she has been a Professor in the Department of Medicine at OHSU since

---

[5] Dr. Gerrity testified at her deposition that, save for a single publication not relevant to this cause of action, her *curriculum vitae* was current as of that date.  (Doc. 63-1, p. 10)

2006. Before that, she was an Associate Professor of Medicine at OHSU from 1999-2006, an Assistant Professor of Medicine at OHSU from 1993-1999, a Fellow/Clinical Instructor in Department of Medicine at the University of North Carolina School of Medicine from 1985-1993, and an Instructor in the Department of Medicine at OHSU from 1983-1985. (Doc. 72-2, ¶ III, p. 2 of 35) Dr. Gerrity also has served as a Staff Physician from 1993 to present at the Division of Hospital and Specialty Medicine/Section of General Medicine at the VA Portland Health Care System (VAPHSC). (Doc. 72-2, ¶ III, p. 2 of 35)

The Declaration and Report shows that Dr. Gerrity "divide[s] [her] time between the VAPHSC, Center for Evidence-based Policy at OHSU, and Scientific Resource Center for the Agency for Healthcare research an Quality Evidence-based Practice Center Program." (Doc. 72-1, ¶ 1, p. 2) The best description of Dr. Gerrity's qualifications in this regard is quoted below from the Declaration and Report:

> **My clinical care and work as an educator and researcher is focused on improving patient care through understanding and using the best available research evidence in health care decision-making, often referred to as evidence based or evidence-informed medicine (EBM).** It combines my expertise and training in clinical epidemiology, clinical research methods, and education. Research studies have varying risks of bias and yield varying levels of confidence in their results. My goal has been to translate, and teach, the basic principles of clinical research design and epidemiology for clinicians, patients, and policymakers so they can understand the strength, or quality of research evidence and its role in their decision-making. I have been faculty for many national and international workshops on EBM and served as the founding Chairperson of the Society of General Medicine's Evidence-Based Medicine task force from 1999-2002. From 2004-2009, I was Co-Editor of the *Journal of General Internal Medicine* . . . [and] . . . I am Certified by the American Board of Internal Medicine in Internal Medicine and licensed to practice medicine in Oregon.

(Doc. 72-1, ¶ 2, p. 2)(bold added, italics in the original) Dr. Gerrity adds in her *curriculum vitae*

9

that she has "focused [her] educational effort on residents, fellows, and junior faculty and ha[s] emphasized clinical teaching, evidence-based medicine . . . and research methods. . . . ha[s] gained a national and international reputation in medical education and evidence-based medicine and ha[s] been invited to teach in setting[s] across the country and in Canada, Japan, and Australia. . . . [and that her] focus for teaching EBM has been state health policymakers as well as translating clinical care research for policymakers."  (Doc. 72-2, ¶ IV, p. 25 of 35)

Dr. Gerrity's *curriculum vitae* shows that her academic, clinical, and administrative credentials date back to 1985.  (Doc. 72-2, ¶ III, pp. 2-3 of 35)  In particular, her areas of research and scholarly interest include research involving "[m]edical . . . measurement methodology . . . [and] . . . [e]vidence-based medicine/clinical epidemiology," and education in "[e]vidence based medicine/clinical epidemiology, faculty evaluation, curriculum and faculty development in the areas of evidence based medicine . . . ."  (Doc. ¶ IV, p. 3 of 35)  Dr. Gerrity has a grant history dating back to 1993, including two evidence-based medicine grants, the first completed in 2015 that provided "state policy makers . . . to facilitate the[ir] use of evidence in policy making," and the second – listed as ongoing – is a collaborative effort with "state Medicaid programs to enhance their use of research evidence in health policy decisions."  (Doc. 72-2, ¶ IV, pp. 3-4 of 35).

Dr. Gerrity has published sixty-seven peer-reviewed articles in over forty professional journals on a myriad of medical issues (Doc. 72-2, ¶¶ 1-67, pp. 7-12 of 35) (none pertaining to EBM or HCV); written thirty-two non-peer reviewed editorials and commentaries[6] (Doc. 72-2, pp. 12-14

---

[6] Although Dr. Gerrity characterizes these articles as "non-peer reviewed," she clarified that point during her deposition.  More particularly, she testified that the review process associated with these publications was not the same as peer-review associated with major journals, but that the articles were reviewed in accordance with "internal peer-review policies . . . where . . . the report [was] . . reviewed by our research director . . . or some . . . specialists . . ... potentially at OHSU or at another institution just to assure that we got it right."  (Doc. 72-12, pp. 15-16)  Dr. Gerrity further clarified that, "We always do internal peer-review, but we don't always do external."  (Doc. 72-12, p. 17)

10

of 35), including five EBM-based publications in the context of HCV (Doc. 72-2,¶¶ 20-24, p. 14 of 35); written thirty-six peer-reviewed research abstracts for international, national, and regional presentation (Doc. 72-2, pp. 15-19 of 35), including four pertaining to EBM (Doc. 72-2, ¶¶ 6, 9-10, 15, pp. 16, 18 of 35); conducted or participated in the presentation of twenty-seven EBM workshops (Doc. 72-2, pp. 27-31 of 35); was an "invited participant" in the HCV workshop in 2014 sponsored by the Patient Centered Outcome Research Institute (PCORI); and chaired the PCORI Merit Review Panel for the clinical management of HCV in August 2015 (Doc. 72-2, pp. 21-22 of 35).

During the period 1999-2000, Dr. Gerrity was a "Member and General Council Liaison" for the Society of General Internal Medicine (SGM) Education Committee, she was a "Member" of SGM from 1999 to 2003, and from 1999-2000 she was the "Founding Chair and Immediate Past-Chair, Evidence -based Medicine Task Force Committee . . . responsible for developing EBM resources and educational programs for SGIM members." (Doc. 72-2, p. 24 of 35)(bold omitted) Dr. Gerrity has earned numerous awards and honors during her career including the Elnora M. Rhodes SGIM Service Award in 2016 for "extraordinary service to SGIM and its mission." (Doc. 72-2, pp. 6-7 of 35)

As shown above, and by her Declaration and Report and *curriculum vitae*, Dr. Gerrity has had a long and distinguished career in the field of internal medicine, as well as a lengthy and distinguished career in EBM. In short, Dr. Gerrity is qualified to give expert testimony as to the trustworthiness of Guidelines from the perspective of evidence-based medicine methodology. The next question is whether Dr. Gerrity's proffered expert testimony would be reliable under *Daubert*.

Turning to the first factor under *Daubert*, plaintiffs do not argue that the EBM principles cannot be or have not been tested. On the contrary, as discussed above at p. 6 n. 4, plaintiffs tacitly

admit that EBM has been tested through the testimony of Dr. Yao, their own expert, when Dr. Yao testified repeatedly that the Guidelines are based on EBM principals, which plaintiffs themselves characterize as the "industry standard" for treating HCV. The first *Daubert* factor is satisfied.

Turning the second factor, much ado was made at Dr. Gerrity's deposition regarding peer-review of her work. As noted above at pp. 10-11 n. 6, while Dr. Gerrity's publications were not subject to peer-review associated with articles appearing in professional journals, her publications were subject to the established internal peer-review standards. In short the peer-review to which Dr. Gerrity's written work has been subjected vouchsafes its reliability in the context of EBM. The second factor under *Daubert* is satisfied.

There is nothing in the record before the court that appears to address the third *Daubert* factor. However, the Declaration and Report and Dr. Gerrity's *curriculum vitae* shows that EBM based research has been taught and practiced in the medical community for many decades. Therefore, the fourth Daubert also is satisfied.

The final question pertaining to admissibility is whether is whether Dr. Gerrity's testimony is relevant. The short answer is: "It is." As discussed above and at p. 6 n. 4, plaintiffs position is that the Guidelines constitute the standard of care in treating Tennessee prisoners infected with HCV, and that defendants' decision not to follow the Guidelines has caused undue pain, suffering and even death to those in the class. Testimony that would demonstrate that the Guidelines are not trustworthy would aid the trier of fact in determining whether plaintiffs have satisfied the first part of the two-part test required to show a violation under § 1983.

As shown above, the first, second, and fourth *Daubert* factors are satisfied. Moreover, Dr. Gerrity's experience, knowledge, skill, training and education also provides a sufficient foundation

for her proffered expert testimony. Accordingly, plaintiffs' motion to exclude or limit Dr. Gerrity's testimony under the *Daubert factors* should be denied.

### D. Plaintiffs' Imbedded Arguments

Plaintiffs make several specific arguments in the context of *Daubert*. The undersigned will address each of them individually for the sake of completeness.

Plaintiffs argue first that Dr. Gerrity "does not possess 'the knowledge, skill, experience training or education' to qualify her to give an opinion about Hepatitis C." (Doc. 63, p. 3) Dr. Gerrity testified at her deposition that her testimony pertained to the evidence and research methodology underpinning the Guidelines, not to the clinical side of treating HCV. (Doc. 63-1, p. 33) Inasmuch as Dr. Gerrity's testimony goes only to the evidence and research methodology used in developing the Guidelines, she is not required to have the "training, education, experience or other qualifications" required of a doctor who actually treats patients with HCV.

Plaintiffs aver that Dr. Gerrity's testimony should be excluded because "she has absolutely no knowledge of TDOC's policies or practices related to the treatment of Hepatitis C." (Doc. 63, p. 5) Dr. Gerrity's testimony pertains to the trustworthiness of the Guidelines, not to TDOC's policies and practices pertaining to the treatment of inmates with HCV. In short, Dr. Gerrity's testimony as to the trustworthiness of the Guidelines does not require any knowledge of TDOC's policies and practices..

Plaintiffs argue that "Dr. Gerrity has never discussed the nature of these policies and practices with the Defendants or their representatives"; therefore, she "has no knowledge whatsoever . . . about how, why, when or even whether TDOC inmates with chronic hepatitis C receive DAA treatment . . . ." (Doc. 63, p. 6) As discussed above, Dr. Gerrity testified at her deposition that her expertise was related to the evidentiary basis for the treatment of HCV, not the clinical side of

13

TDOC's treatment of the disease. Here too, Dr. Gerrity's testimony regarding the trustworthiness of the Guidelines does not require any knowledge of TDOC's policies and procedures.

Referring to Dr. Gerrity's deposition, plaintiffs argue that Dr. Gerrity "considers herself to 'be an expert witness related to the evidence that was being used by Tennessee in making some of their decisions.'" (Doc. 63, p. 6) While it is true that Dr. Gerrity made that statement at her deposition (Doc. 63-1, p. 6), it is abundantly clear from Dr. Gerrity's deposition that her expert testimony will be limited to the trustworthiness of the Guidelines, not to any other evidence that the State of Tennessee might have considered in developing the policies and procedures at issue.

Plaintiffs argue that Dr. Gerrity's testimony should be excluded "because it is fundamentally unreliable," *i.e.*, because her "testimony is not based on 'good grounds,' because it is based on no grounds at all." (Doc. 63, p. 6) More particularly, plaintiffs argue that "Dr. Gerrity bases her opinion not on affirmative evidence, but on the lack of evidence . . . ." (Doc. 63, p. 7) The lack of evidence is precisely the crux of Dr. Gerrity's proffered testimony, *i.e.*, her testimony will go to the lack of evidence to support the Guidelines. To the extent that Dr. Gerrity's proffered testimony points to a lack of evidence underpinning the Guidelines, then that constitutes affirmative evidence that the Guidelines may be unreliable.

Finally, plaintiffs refer to Dr. Gerrity's deposition in which she testified, "There's a fee that the states pay each year to be part of the collaboration, and they determine what topics we . . . work on." (Doc. 63-1, p. 41) From this, plaintiffs argue that, "because of employment with a private entity financially supported by the State of Tennessee . . . Dr. Gerrity is essentially on retainer for the State in offering medical advice, a position of such conflict as to render her opinion more 'prejudicial than probative.'" (Doc. 63, p. 9) Dr. Gerrity asserts in her Declaration and Report, "I have not been compensated for my time for reviewing documents related to the Class Action

14

Complaint and research evidence related to claims made . . . . I will not be compensated for my time providing testimony. I have not provided a deposition or testimony on any medical condition during the previous four years." (Doc. 72-1, ¶ 2, p. 2) Dr. Gerrity clearly is not a "hired gun," nor should her affiliation with the collaborative effort with "state Medicaid programs to enhance their use of research evidence in health policy decisions" be construed as disqualifying..

Plaintiffs also cites *Turpin v. Merrell Dow Pharm., Inc.*, 959 F.2d 1349, 1352 (6th Cir. 1992) for the proposition that Dr. Gerrity's testimony should be excluded because she "is essentially on a retainer for the State." However, *Turpin* stands for the proposition that "close judicial analysis" is required . . . because expert witnesses are not necessarily unbiased scientists . . . [t]hey are paid by one side for their testimony," not for the proposition that an expert's testimony should be excluded because he or she is paid for their testimony  As already noted, there will be no jury to protect from bias in this case, nor will Dr. Gerrity be compensated financially for her testimony. The undersigned is confident that the Chief Judge is fully capable at the upcoming bench trial to determine whether there is any conflict Dr. Gerrity's testimony and, if there is, how much weight he should to give to Dr. Gerrity's testimony.

The arguments addressed above all are without merit.  Accordingly the undersigned recommends that plaintiffs' motion to exclude Dr. Gerrity's testimony on these grounds be excluded.

### IV.  CONCLUSIONS AND RECOMMENDATIONS

The Magistrate Judge **RECOMMENDS** for the reasons explained above that plaintiffs' motion to exclude the opinions and testimony of Dr. Gerrity (Doc. 62) be **DENIED**.  The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein.  A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof.  Failure to

file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

      **ENTERED** this the 21st day of August, 2018

                            /s/ Joe B. Brown_____
                            Joe B. Brown
                            United States Magistrate Judge