UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CHARLES GRAHAM and RUSSELL L. DAVIS, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | NO. 3:16-cv-1954 |
| v. | ) ) ) | |
| TONY C. PARKER, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This class action arises from Tennessee's treatment of inmates diagnosed with the Hepatitis C virus ("HCV"). Named Plaintiffs Charles Graham and Russell L. Davis allege that they and thousands of other prisoners did not receive timely and appropriate treatment for HCV, resulting in complications and premature deaths. Under 42 U.S.C. § 1983, Plaintiffs bring official capacity claims for injunctive relief, based upon alleged deliberate indifference to a serious medical need in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution, against Defendants Tony C. Parker, Commissioner of the Tennessee Department of Corrections ("TDOC"); Dr. Marina Cadreche, the TDOC Assistant Commissioner of Rehabilitative Services; and Dr. Kenneth Williams, the TDOC Medical Director.

Before the Court is Plaintiffs' Amended Motion for Summary Judgment (Doc. No. 92), Defendants' response (Doc. No. 108), and Plaintiffs' reply (Doc. No. 114). The parties also filed statements of facts and exhibits. Also before the Court are two fully briefed Motions for Review (Doc. No. 138, 159) of rulings of the Magistrate Judge striking a limited portion of the expert report of Defendant Williams. For the following reasons, the motions will be denied.

I.  Facts

The parties agree upon a limited number of facts. (See Doc. Nos. 109, 113.)

HCV is a contagious virus spread through blood and bodily fluids. (Doc. No. 109 at ¶ 1.) Depending on the progression of HCV infection and related level of liver disease, patients may suffer anywhere from mild to very serious symptoms that can lead, in some circumstances, to death. (Id. at ¶¶ 2-3) In the past, the primary treatment for HCV infections involved injections of drugs called interferons. (Id. at ¶ 4.) However, there are numerous problems with interferon-based treatment. (Id.) In 2011, the Federal Drug Administration approved new direct acting drugs ("DAAs") to treat HCV. Compared to interferon-based treatment regimens, DAAs cause fewer side effects and have more successful outcomes. (Id.)

Defendant Dr. Kenneth Williams is TDOC's Director of Medical Services, Chief Medical Officer, and Director of Pharmacy. (Id. at ¶ 7.) Dr. Williams is responsible for managing the contract with TDOC's medical vendor, Centurion of Tennessee, and TDOC's pharmacy vendor, Clinical Solutions Pharmacy, (Doc. No. 113 at ¶ 30), which includes creating and implementing TDOC's HCV treatment protocols (Doc. No. 109 at ¶ 7). On behalf of TDOC, Dr. Williams developed the HCV Guidance. (Id. at ¶ 8.) The HCV Guidance was created in 2012 or 2013 and has been updated several times. (Doc. No. 113 at ¶ 39.) It was last updated in 2016. (Id.) The HCV Guidance directs the work of the TDOC Advisory Committee on HIV and Viral Hepatitis Prevention and Treatment ("TACHH"). (Doc. No. 109 at ¶ 8.) Dr. Williams is the Chair of the TACHH, that includes TDOC medical personnel and medical officials with CoreCivic and Centurion. (Id.; Doc. No. 133 at ¶ 51.) The TACHH evaluates recommendations for treatment with DAAs. (Doc. No. 113 at ¶ 50.) Only the TACHH, rather than individual prison medical providers, can prescribe DAAs to TDOC inmates. (Doc. No. 109 at ¶ 10.)

2

As of June 30, 2018, approximately 4,357 current inmates tested positive for HCV. (Doc. No. 113 at ¶ 42.) From January 2015 through June 2018, the TACHH considered an average of 19 patients per month for DAAs, (Doc. No. 109 at ¶ 11), but only approved DAAs for an average of 8 patients. (Id. at ¶ 12.) Defendants acknowledge 56 HCV-related deaths between 2013 and 2017. (Id. at ¶ 14.)

Plaintiffs Charles Graham and Russell Davis have both been inmates in facilities operated by the TDOC. (Doc. No. 32 at 1.) Graham was incarcerated at Hardeman County Correctional Facility, and was diagnosed with HCV in 2005, but his case was not presented to the TACHH for evaluation prior to his parole on December 14, 2017. (Doc. Nos. 109 at ¶ 6; 113 at ¶ 67.) Davis is incarcerated at Northwest Correctional Complex, and was diagnosed with HCV in 2011. (Doc. Nos. 113 at ¶ 66; 110-5 at ¶ 6.) On July 25, 2016, Graham and Davis brought this suit on behalf of themselves and a class of HCV-positive TDOC inmates to enjoin Defendants from denying medically necessary treatment. (Doc. No. 1.) On May 4, 2017, the Court certified the class as follows:

> All persons currently incarcerated in any facility under the supervision or control of the Tennessee Department of Corrections or persons incarcerated in a public or privately owned facility for whom the Tennessee Department of Corrections has ultimate responsibility for their medical care and who have at least 90 days or more remaining to serve on their sentences and are either currently diagnosed with Hepatitis C infection or are determined to have Hepatitis C after a screening test has been administered by the Department of Corrections.

(Doc. No. 33.)

II.     Legal Standard

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving

3

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A motion for summary judgment requires that the Court view the "inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). After the movant has satisfied this initial burden, the nonmoving party has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" Matsushita, 475 U.S. at 587. If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-252 (1986). "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citing Anderson, 477 U.S. at 247-49).

III. Analysis

The Court concludes that summary judgment is inappropriate.

A. Pervasive Material Factual Disputes

Foremost, this is a classic example of a case in which many – if not most – key facts are disputed. Indeed, as reflected in the factual recitation above, the parties agree on only a few of the most rudimentary facts. This is a lawsuit about how Tennessee evaluates and provides medical treatment to its HCV-positive prison population. But the parties differ on their understandings of both (1) the science underlying how those decisions are made (e.g., when DAA treatment is

4

necessary and appropriate) and (2) TDOC policies and practices guiding the TACHH's decision-making process. To illustrate these disputed factual issues, the Court need go no further than the parties' disagreements about: (1) the symptoms of HCV; (2) the progression of HCV; (3) whether DAAs are the standard of care for treatment of HCV-positive individuals in the early stages of the disease; (4) whether the 2016 HCV Guidance states TDOC's "current policy" on HCV diagnosis and treatment; (5) what criteria the TACHH utilizes in deciding whether to administer DAAs to inmates; and (6) the number of patients that have received DAAs. (Doc. No. 109 ¶¶ 1-15.) Remarkably, the parties even disagree about whether one of the two named plaintiffs, Russell Davis, *has received DAAs* – Plaintiffs say he hasn't and Defendants say he has! (Doc. Nos. 109 at ¶ 5; 113 at ¶ 66.) Accordingly, Plaintiffs' Statement of Undisputed Facts is self-defeating. (See Doc. No. 93.)

Furthermore, in response to the motion, Defendants filed a Statement of Additional Disputed Material Facts. This *57-page* statement contains 155 paragraphs of additional material facts that Defendants assert are in dispute. (See Doc. No. 113.) Plaintiffs make a variety of objections about this filing. These additional facts are generally well-supported by the record. While certain of the paragraphs offer factual information unnecessary for purposes of deciding the motion, the purpose of most of Defendants' additional statements of fact is to illustrate factual disputes. Those factual disputes concern: the progression of HCV; the HCV standard of care *vis a vis* DAAs, TDOC's treatment policy, the TACHH's decision-making, and TDOC's HCV treatment outcomes. (Id.) This only further illustrates that summary judgment is inappropriate.

The fundamental factual disputes are also highlighted by both parties' reliance upon contradictory experts. In short, Defendants contend that they "submit expert proof that the effectiveness of DAAs to prevent end-stage liver disease has not been validated by applicable

5

principles of evidence based medicine." (Doc. No. 108 at 24.) On the other hand, Plaintiffs' expert "advocates for universal treatment." (Doc. No. 93 at 18.) Even in their attempt to secure summary judgment, Plaintiffs appear to acknowledge this "battle of the experts." (Id.)

In sum, the Court finds that it must resolve numerous competing material factual issues in order to decide the key claims raised by the Plaintiffs. This makes summary judgment inappropriate.

### B. Section 1983 Action for Violation of the Eighth Amendment

Summary judgment is also inappropriate based on the substance of Plaintiffs' § 1983 claim against the three Defendants.

#### i. Defendants Parker and Cadreche

Plaintiffs must first establish that the individual Defendants acted under color of state law and that their actions caused the violations of their Eighth Amendment rights. 42 U.S.C. § 1983; Thomas v. Nationwide Children's Hosp., 882 F.3d 608, 612 (6th Cir. 2018). Here, Plaintiffs sue the three Defendants in their official capacities for injunctive relief. Defendants argue that Plaintiffs have not adduced any admissible evidence demonstrating that either Defendant TDOC Commissioner Parker or Defendant TDOC Assistant Commissioner Cadreche directly participated in any of the conduct at issue so that Plaintiffs would be entitled to summary judgment against them. Plaintiffs contend that Defendants raise only a "distinction without a difference." (Doc. No. 114 at 2.) Somewhat curiously, Plaintiffs seem to take a fallback position that, because a finding against Defendant Williams would be imputed to the state, a finding against Defendants Parker and Cadreche, "while also supported by the facts" (which Plaintiffs do not explain), would be unnecessary. (Doc. No. 114 at 3.)

6

A state official in his or her official capacity, when sued for injunctive relief, is a person that can be sued under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State" that would trigger Eleventh Amendment immunity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n.10 (1989) (citing Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985); Ex parte Young, 209 U.S. 123, 159-160 (1908)). However, "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." Ex parte Young, 209 U.S. at 157. Thus, "the state official sued 'must have, by virtue of the office, some connection with the alleged unconstitutional act or conduct of which the plaintiff complains.'" Top Flight Entm't, Ltd. v. Schuette, 729 F.3d 623, 634 (6th Cir. 2013) (quoting Floyd v. Cty. of Kent, 454 F. App'x 493, 499 (6th Cir. 2012). Specifically, "[a] plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations." Id. In Schuette, for example, the Sixth Circuit affirmed the dismissal of official capacity claims against Michigan Attorney General Bill Schuette because the plaintiffs had not established how he was involved in the issuance of licenses or the enforcement of rules at issue in the case. See Schuette, 729 F.3d at 634.

The Complaint alleges that Parker "has authority over all aspects of the management and governance of all Tennessee penitentiaries," (Doc. No. 1 at ¶ 6), and Cadreche "has authority over all aspects of health care for inmates in [TDOC's] custody," (id. at ¶ 7.) Neither is mentioned again in that pleading. At summary judgment, Plaintiffs' Statement of Undisputed Facts *does not mention* either Defendant Parker or Cadeche. (See Doc. No. 109 at ¶¶ 1-15.) Furthermore, Defendants' Statement of Additional Disputed Facts proactively asserts that Defendant Parker was

7

*not* involved in issuing the HCV Guidance and the decisions of the TACHH. (Doc. No. 113 at ¶¶ 38, 51.) Plaintiffs dispute these averments, and, in their reply brief, cite record evidence to question whether these Defendants have improperly "foisted" responsibility onto Defendant Williams. (Id.; Doc. No. 114 at 3 n.2.) Because there are no undisputed facts regarding these Defendants, and Plaintiffs have provided no explanation of their "connection with the alleged unconstitutional act or conduct of which the plaintiff[s] complain," Plaintiffs are not entitled to summary judgment.

      ii.      Defendant Williams

As the primary author of the HCV Guidance and the leader of the TACHH, Defendant Williams is at the center of this case and there is sufficient evidence of his personal connection. Accordingly, the Court examines the alleged constitutional violation.

The Eighth Amendment prohibits any punishment that violates civilized standards of decency or "'involve[s] the unnecessary and wanton infliction of pain.'" Estelle v. Gamble, 429 U.S. 97, 102-03 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). As relevant here, an Eighth Amendment violation occurs if a prison official acts with deliberate indifference to a prisoner's serious medical needs. Estelle, 429 U.S. at 104; Dominguez v. Corr. Med. Servs., 555 F.3d 543, 550 (6th Cir. 2009). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61 (2011). That is, it must be shown that the prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

As the Supreme Court has set forth, there is an objective and a subjective component to deliberate indifference. Objectively, a plaintiff must show "the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." Blackmore v. Kalamazoo Cty., 390 F.3d 890,

8

899 (6th Cir. 2004). The Sixth Circuit has strongly suggested that HCV is a serious medical condition sufficient to satisfy the objective component of the deliberate indifference analysis. See, e.g., Hix v. Tenn. Dep't of Corr., 196 F. App'x 350, 356-57 (6th Cir. 2006); Owens v. Hutchinson, 79 F. App'x 159, 161 (6th Cir. 2003). Plaintiffs have satisfied the objective component.

"The subjective component requires [a plaintiff] to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" Blackmore, 390 F.3d at 895 (quoting Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000)). This is done by establishing that the official being sued (1) "subjectively perceived facts from which to infer a substantial risk to the prisoner"; (2) "did in fact draw the inference'; and (3) "then disregarded that risk." Richko v. Wayne Cty., Mich., 819 F.3d 907, 915 (6th Cir. 2016) (quoting Rouster Cty. of Saginaw, 749 F.3d 437, 446 (6th Cir. 2014)). While a plaintiff "need not show that [a defendant] acted with the specific intent to harm" him, Phillips v. Roane Cty., Tenn., 534 F.3d 531, 540 (6th Cir. 2008), the defendant must have "recklessly disregard[ed] th[e] risk" to him. Dominguez, 555 F.3d at 550 (citing Phillips, 534 F.3d at 540); Finn v. Warren Cty., Ky., 768 F.3d 441, 452 n.2 (6th Cir. 2014). This is "a very high standard of culpability, exceeding gross negligence." Meier v. Cty. of Presque Isle, 376 F. App'x 524, 528 (6th Cir. 2010) (quoting Ross v. Duggan, 402 F.3d 575, 590 n.7 (6th Cir. 2004) (emphasis in original)); Estelle, 429 U.S. at 106 (that a prison employee has "been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment"). Deliberate indifference is not usually shown just because a prisoner has a difference in opinion about his treatment or simply posits that alternative procedures might better address particular needs. Accordingly, to establish a constitutional violation for inadequate medical treatment, prisoners must show that the treatment was "so woefully inadequate as to amount to no treatment at all," or that they were consciously exposed "to an excessive risk of serious harm." Alspaugh v.

9

McConnell, 643 F.3d 162, 169 (6th Cir. 2011) (citing Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

Here, the Court notes that, in its class certification order, it cautioned that "Plaintiffs will have to show that Defendants' practices and procedures related to *all* inmates who have HCV are unconstitutional and that Defendants' practices and procedures for all inmates with Hepatitis C should be revised." (Doc. No. 32 at 7 (emphasis in original).) Thus, the Court focuses on Defendant Williams' actions towards the inmate population as a whole. Even if one credits Plaintiffs' assertions that the TACHH moves impermissibly slowly, the undisputed facts are that it has approved over 400 inmates for DAA treatment and has regularly met to consider new patients over the last four years. While TDOC disputes the appropriateness of DAA treatment for particular patients, some inmates *do* indeed receive DAAs. Plaintiffs have not established, on the summary judgment record, that inmates not approved for DAAs are otherwise ignored by TDOC. The Court cannot conclude that, under Williams' guidance, that there was "no treatment at all" of the HCV-positive TDOC inmate population. Plaintiffs are not entitled to summary judgment against Williams.

  C. Motions to Review

Magistrate Judge Brown issued a Report and Recommendation in which he recommended that the Court grant in part Plaintiffs' Motion to Strike the Declaration of Defendant Williams (Doc. No. 115) and not consider two statements therein when deciding the pending motion for summary judgment. Defendants filed a Motion for Review (Doc. No. 138) that was accompanied by a Supplemental Declaration of Dr. Williams (Doc. No. 138-1). After Plaintiffs filed a response (Doc. No. 145), the Court returned the matter for reconsideration. (Doc. No. 147). Magistrate Judge Brown held a hearing, considered the original Report and Recommendation and new filings,

and issued an order adhering to the original conclusion. (Doc. No. 151.) Defendants filed another Motion for Review (Doc. No. 159), to which Plaintiffs have responded (Doc. No. 165).[1]

The Motions for Review are of no moment. As reflected above, the Court denies Plaintiff's motion for summary judgment. The Court did not rely upon either the Williams Declaration or Supplemental Williams Declaration in reaching that decision. Accordingly, Defendants' motions for review will be denied as moot.

An appropriate Order will enter.

                                                    */s/ Waverly D. Crenshaw, Jr.*
                                                    WAVERLY D. CRENSHAW, JR.
                                                    CHIEF UNITED STATES DISTRICT JUDGE

---

[1] Magistrate Judge Brown prepared his decisions on the Motion to Strike in the form of a Report and Recommendation because he was ordered to do so. (Doc. No. 125.) However, this was a non-dispositive issue that the Magistrate Judge was capable of deciding by order. The Court will reverse a non-dispositive ruling from a Magistrate Judge only if it is clearly erroneous or based on legal error. Fed. R. Civ. P. 72(a); M.D. Tenn. LR 72.01(a). For the sake of clarity, the Court will refer to the R&Rs as the Magistrate Judge's "decisions."