# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **GREGORY ATKINS, CHRISTOPHER GOOCH, KEVIN PROFFITT, and THOMAS ROLLINS, JR.,** on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:16-CV-1954** |
| | ) | |
| **TONY C. PARKER, Commissioner, Tennessee Department of Corrections; and DR. KENNETH WILLIAMS, Medical Director, Tennessee Department of Corrections,** in their official capacities, | ) ) ) ) ) | **Judge Crenshaw** **Magistrate Judge Brown** |
| | ) | |
| **Defendants.** | ) | |

_____

## PLAINTIFFS' PRETRIAL BRIEF
_____

Pursuant to the Court's order, Dkt. 219, Plaintiffs Gregory Atkins, Christopher Gooch, Kevin Proffitt, and Thomas Rollins, Jr. ("Named Plaintiffs" or "Plaintiffs"), on behalf of themselves and all others similarly situated, hereby submit this pretrial brief.

## **INTRODUCTION**

This case is about rationing medicine. Defendants unconstitutionally ration treatment for inmates infected with the Hepatitis C virus ("HCV"), a disease for which there is a cure. In doing so, Defendants act with deliberate indifference to the serious medical needs of inmates in the custody of the Tennessee Department of Correction ("TDOC") in violation of the Eighth Amendment to the United States Constitution.

Hepatitis C is a serious, highly infectious disease that, if left untreated, is ultimately fatal. In the United States, Hepatitis C is considered a "silent epidemic." However, Class members'

constant cries, pleas for treatment, and known suffering ensure that Defendants "have known little silence from this prevalent disease." **Plts' Exh. 60**, p. 1. Those voices are many – there are approximately 4,800 known Class members with chronic Hepatitis C.

In response to this thunderous epidemic, Defendants instituted a system of rationing direct acting antiviral ("DAA") medications through the TDOC Advisory Committee on Hep C and HIV ("TACHH"). Medical providers in the prisons cannot prescribe DAAs for HCV-positive inmates based on their medical judgment. Rather, inmates infected with HCV are at the mercy of TACHH, whose members neither see nor talk to the inmates nor generally consult with the medical providers at the prisons. Instead, TACHH approves or denies life-saving treatment for prisoners based purely on the number of treatments allotted for that month. In other words, treatment under TDOC policy is a game of chance, and Class members must roll the dice.

Treatment with DAAs is the standard of care for Hepatitis C *regardless* of fibrosis stage. There is no other medically acceptable form of treatment for the disease. As of March 15, 2017, 4,020 inmates had been diagnosed with HCV, but TACHH had approved treatment for only 17 inmates, less than 1% of the total number of inmates known to have the virus.

Although Defendants have updated their Guidance and appear to be treating more inmates since this lawsuit was filed, their system of rationing has not changed. TACHH still is the only mechanism for treatment for Class members, and the number of inmates that can be treated per month is functionally capped at 50, which is TACHH's current monthly capacity.

Defendants intentionally ration DAAs, and they are aware of and indifferent to the harms caused by that rationing. Class members who do not receive approval for treatment by TACHH must endure the symptoms of HCV infection, including fatigue, jaundice, pain, rashes, nerve damage, emotional distress, and cognitive dysfunction, all the while suffering progressive liver

fibrosis. Some die awaiting treatment. Defendants' records indicate that at least 109 individuals have died in their custody from complications of the disease in the last several years. As described herein, Plaintiffs will prove at trial that Defendants' policies and practices, past and current, of denying treatment to the vast number of HCV-positive inmates is unconstitutional.

## ARGUMENT

The Eighth Amendment to the United States Constitution "imposes duties on [prison] officials," including, among other things, the duty to "ensure that inmates receive adequate . . . medical care . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). An unconstitutional deprivation of medical care is shown by "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). Deliberate indifference is judged subjectively by showing a knowing disregard for the risks posed to the inmate by his serious medical need. *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (citing *Farmer* at 837).

**I.      Courts Uniformly Find Denial of DAA Treatment to Violate the 8th Amendment**

The advent of DAA medications dramatically altered the standard of care for the treatment of HCV. "In 2011, effective treatments [DAAs] for Hepatitis C were introduced, whereas before that time the available therapies produced inconsistent results and severe side effects." *Mann v. Ohio Dep't of Rehab. & Corr.*, No. 2:18-CV-01565, 2019 WL 2617471, at *9 (S.D. Ohio June 26, 2019). "Accordingly, caselaw prior to medical developments in Hepatitis C treatment appears to be out of date with respect to the issue of whether a defendant ought to be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *Id*. (distinguishing *Owens v. Hutchinson*, 79 F. App'x 159 (6th Cir. 2003) and *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350 (6th Cir. 2006)).

There is now a ***broad*** consensus among the courts that have considered the issue that denial of DAAs through rationing or prioritization is contrary to current medical standards and inconsistent with the 8th Amendment.  *See Hoffer et al. v. Inch*, No. 4:17-CV-00214, 2019 WL 1747074 (N.D. Fla. April 18, 2019) (granting summary judgment to plaintiffs on showing that defendants made treatment decisions based on lack of funding); *Buffkin v. Hooks*, No. 1:18-cv-502, 2019 WL 1282785 (M.D. N.C. Mar. 20, 2019) (enjoining defendants to cease denying DAA treatment for certain inmates); *Stafford v. Carter*, No. 117-CV-00289, 2018 WL 4361639 (S.D. Ind. Sept. 13, 2018) (granting summary judgment to plaintiffs on showing that defendants rationed DAAs through prioritization categories and treatment caps); *Postawko v. Missouri Dep't of Corr.*, No. 2:16-CV-04219-NKL, 2017 WL 1968317, at *6 (W.D. Mo. May 11, 2017) (finding plaintiffs stated a claim by alleging that defendants refused to consider treatment to certain categories of infected inmates); *Abu-Jamal v. Wetzel*, No. 3:16-CV-2000, 2017 WL 34700, at *19 (M.D. Pa. Jan. 3, 2017) (issuing a preliminary injunction based on a showing that the defendants' treatment committee violated the 8th Amendment).

While this Court will be the first in the Sixth Circuit to opine on the denial of DAA treatment for Hepatitis C on a class-wide basis, a number of courts in this Circuit have permitted individual prisoner claims based on denial of HCV treatment to proceed.  *See, e.g.*, *Vandiver v. Prison Health Servs.*, 727 F.3d 580 (6th Cir. 2013) (finding denial of treatment for Hepatitis C to pose risk of imminent harm under § 1915); *Hamby v. Parker*, 307 F. Supp. 3d 822 (M.D. Tenn. 2018) (same); *Jones v. Hall*, No. 3:12-CV-436, 2012 WL 2003574, at *4 (M.D. Tenn. June 5, 2012) (same); *Driver v. Sator*, No. 3:13-CV-364, 2013 WL 1856826, at *4 (M.D. Tenn. May 1, 2013) (same); *Odem v. Mahar*, No. 1:13-CV-0116, 2013 WL 5755082, at *2 (M.D. Tenn. Oct. 22, 2013) (same); *Mize v. Sator*, No. 3:11-CV-685, 2016 WL 6948334, at *1 (M.D. Tenn. Nov.

28, 2016) (denying defendants summary judgment); *Shabazz v. Centurion*, No. 17-1051-JDT-CGC, 2018 WL 1440985, at *1 (W.D. Tenn. Mar. 22, 2018) (§ 1915); *Phillips v. CoreCivic, Inc.*, No. 3:18-CV-00973, 2018 WL 6446588, at *3 (M.D. Tenn. Dec. 10, 2018) (same); *Rogers v. S. Health Partners*, No. 3:18-CV-01388, 2019 WL 189829, at *2 (M.D. Tenn. Jan. 14, 2019) (same); *Duckett v. Cumberland Cty. Sheriff Dep't*, No. 2:18-CV-00024, 2019 WL 1440635, at *1 (M.D. Tenn. Apr. 1, 2019) (same).  Indeed, the large volume of *pro se* filings in Tennessee courts is indicative of the gravity of the problem within the Tennessee prison system.

## II.    Defendants Are Deliberately Indifferent to Class Members' Medical Needs

Once a serious medical need is found, a prison official becomes liable under the Eighth Amendment when he "knows of and disregards" that need.  *Farmer*, 511 U.S. at 837.  Knowing disregard is "a state of mind more blameworthy than negligence."  *Id*. at 835.  Courts have compared the subjective requirement to criminal recklessness.  "[I]t is enough for the prisoner to show that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *LeMarbe v. Wisneski*, 266 F.3d 429, 436 (6th Cir. 2001) (quoting *Farmer* at 842).

Practically, a § 1983 plaintiff shows deliberate indifference by putting on proof, whether direct or circumstantial, "that each defendant subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it."  *Rinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018) (citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

In this case, the evidence points to the conclusion that Defendants are deliberately indifferent to Class members' risk of suffering, degeneration, and death from Hepatitis C. Plaintiffs' Expert **Dr. Zhi (John) Yao** will testify about the nature of the disease, the symptoms of infection and irreversible damage it does to the body, the history of treatment and current

medical standard of care, and the long-term consequences of lack of treatment. In reviewing both the 2016 and 2019 HCV Guidance, as well as other evidence, Dr. Yao will testify that "[t]he TDOC, by practice and policy, rations DAA treatment for inmates with HCV infection, which is definitely below the current standard of care, depriving inmates of necessary medical care for serious conditions." Dkt. 204-1 at PageID # 2733. He ultimately concludes that, "[d]espite knowledge of their HCV infection and the fatal effects of the disease, the TDOC has consistently and systemically denied inmates effective treatment, although the department has committed to offering quality health care to inmates that meets 'the community standard of care.'" *Id*.

Plaintiffs will present evidence proving Defendants' deliberate indifference, such as:

➢ Death. Defendants knew of the substantial risk of death to Class members from their policies and practices and disregarded that risk. Through **Dr. Williams' testimony** and **Plts' Exhibits 1-7**, Plaintiffs will show that Defendants kept a rolling count of inmates who died as a result of their untreated Hepatitis C – 109 individuals to date – and took no reasonable measures to abate those deaths. Plaintiffs' witness **Ms. Debbie Powell** will testify about her own son's death from Hepatitis C while in Defendants' custody.

➢ Suffering. Defendants knew of the substantial risk of suffering to Class members from their policies and practices and disregarded that risk. **Named Plaintiffs** and other **Class members** will testify about the pain and other symptoms they have experienced as a result of their untreated Hepatitis C and Defendants' failure to treat them nonetheless. Former Class member **Mr. Russell Davis** will testify about his experiences living with irreversible cirrhosis due to Defendants' refusal to treat him for many years.

➢ Magnitude of the Epidemic. Defendants know the magnitude of the HCV epidemic in the prison system. In fact, they keep a rolling tally of all inmates who have been

diagnosed with Hepatitis C, which count is currently near 4,800. **Plts' Exh. 19-20**. They also keep a rolling tally of both those who have been approved for treatment and those who have actually been treated with DAA medications. **Plts' Exh. 21-33**. Internal TDOC documents show that Defendants were well aware of the paltry number of inmates receiving treatment as compared to the total number who needed treated. **Plts. Exh 34**. *See Stafford* at *15 (finding that treatment of 1.2% of inmates showed disregard of need). These same documents will show that, since this lawsuit was filed, the Defendants' policies and practices have allowed the number of inmates with HCV to grow. Despite acknowledging the continued growth in numbers, Defendants choose to remain willfully ignorant about the precise scale of the epidemic. Even under the new HCV Guidance, Defendants decline to test the current correctional population. **Joint Exh. 38**. Without testing the entire population, potentially hundreds, if not thousands, of Class members will never be diagnosed as HCV-positive and, therefore, will never receive treatment.

➢ <u>No Independent Medical Judgment.</u> Defendants' policy creates mandatory treatment criteria and removes "individualized medical assessments" from HCV treatment decisions, which constitutes deliberate indifference. *Buffkin,* 2019 WL 1282785, at *9. Plaintiffs submit the testimony of **Dr. Kevin Johnson**, **Dr. Bernard Dietz**, **Dr. Cortez Tucker** and **Dr. Keith Ivens** by deposition as evidence that only TACHH, and not medical providers, exercises discretion in making medical decisions for the treatment of Class members. Defendant **Dr. Williams** will confirm that this is the standard practice for TACHH, which is memorialized in both the 2016 and 2019 HCV Guidance. Named Plaintiffs and Class members will testify about the dissonance between their individualized medical assessments with their medical providers and what happens in the

secret TACHH meetings. Former Class member **Samuel Hensley** will testify that he begged for treatment for his Hepatitis C for 12 years and then had to wait almost a year for treatment even after TACHH approval. Similarly, Class member **Kevin Proffitt** will testify that he has still not received treatment, despite TACHH approval, because the medical providers in the prisons cannot exercise independent medical judgment under TDOC's policy to treat his Hepatitis B and C infections. Named Plaintiff **Thomas Rollins**, who needs double hip replacement, lives in constant pain, as his medical provider cannot prescribe him pain medication until TACHH treats his HCV.

➢ Rationing. Defendants know that their policies and practices of rationing treatment to a maximum number of HCV-positive Class members per month meant, necessarily, delaying or denying treatment to the remaining Class members. Plaintiffs will present TACHH meeting minutes that illustrate Defendants' practice of approving and denying treatment for Class members. *See* **Joint Exhs. 1-37**. In doing so, Defendants didn't simply disregard the resultant risk to Class members; they intentionally instituted a system by which some Class members simply would not receive necessary medical care. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) (finding that "ignore[ing] a condition of confinement that is sure or very likely to cause serious illness or needless suffering in the next week or month or year" to be deliberate indifference). **Dr. Williams** and **Dr. Wiley** will talk about their reasons for rationing treatment, such as cost. *See Stafford*, 2018 WL 4361639, at *13 ("[T]he Constitution is violated when they [convenience and cost] are considered to the exclusion of reasonable medical judgment about inmate health."). Indeed, **Dr. Keith Ivens'** deposition testimony will confirm that the very "purpose of TACHH committee is to spread liability." Named Plaintiffs and Class members will

testify about their experiences under this rationing system. For example, Named Plaintiff **Christopher Gooch** will testify his disease rapidly advanced over a short period of time, but he has still been denied care. Named Plaintiff **Greg Atkins** has never even been considered for treatment by TACHH, even under the new 2019 HCV Guidance, despite his advanced F4 cirrhosis stage. TACHH expressly denied Class member **Scott Spangler** treatment, despite his advanced F4 cirrhosis stage, and Defendants continue to deny him treatment under the current May 2019 Guidance.

## III. Defendants' Policy Is Proof of Causation

A governmental entity violates the Eighth Amendment "where its policies are the moving force behind the constitutional violation." *Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005) (quoting *City of Canton v. Harris,* 489 U.S. 378 (1989)). Defendants **Dr. Williams** and **Commissioner Parker** will testify that they are ultimately responsible for all medical policies and practices within TDOC. **Plaintiffs' Exhibits 60-62, 65-71** are those policies as written, which were drafted and are enforced by Dr. Williams. Indeed, the current system of requiring prison medical providers to refer all patients to TACHH and removing their authority to independently prescribe DAAs was designed and implemented by Dr. Williams. **Commissioner Parker**'s testimony will establish that he is the final authority for the Department and holds the ultimate authority to hire and fire its employees and to ensure compliance by its medical contractors, and that official medical policies bear his signature upon his approval.

"As such, because Plaintiffs' claim is based on inadequacies in [the Department's] policy and the implementation of that policy, the causation element is satisfied." *Hoffer*, 2019 WL 1747074, at *3. Because medical providers in the prisons cannot exercise their own medical judgment as to HCV treatment, Defendants cannot shift responsibility for the lack of care to

them.  *See Stafford*, 2018 WL 4361639, at *15 ("[O]therwise physicians would be left to simply apply their own medical judgment as to the proper course of treatment for each inmate.").

## IV.    Plaintiffs are Entitled to Comprehensive Injunctive Relief

When the entity's deliberate indifference is the result of a policy that applies to the plaintiff as a member of the class, class-wide relief is appropriate.  *Sharpe v. Cureton*, 319 F.3d 259, 268–69 (6th Cir. 2003).  In a class-wide, injunctive relief case, "[w]hat matters . . . is not the raising of common questions, but the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Dodson v. CoreCivic*, No. 3:17-CV-00048, 2018 WL 4776081, at *3 (M.D. Tenn. Oct. 3, 2018) (emphasis in original) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)).  In *Dodson*, the Court rejected defendants' argument that individual medical issues predominated, instead certifying a class of inmates with Type 1 and Type II diabetes precisely because class-wide injunctive relief would cure the alleged deficiencies in defendants' institute-wide policies and practices.

"If the court finds the Eighth Amendment's subjective and objective requirements satisfied, it may grant appropriate injunctive relief."  *Farmer* at 846.  Injunctive relief should be tailored to correct defendant's disregard for plaintiff's medical needs.  "[T]o establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future."  *Id*.  In other words, the evidence at trial must demonstrate "a contemporary violation of a nature likely to continue."  *Id*. at 845 (quoting *United States v. Oregon State Medical Soc.,* 343 U.S. 326, 333 (1952)); *Hoffer*, 2019 WL 1747074, at *2 (finding injunctive relief appropriate where "'there is a real and immediate threat of repeated injury in the future").

Since the commencement of this case, Defendants have rationed treatment for Class members through the TACHH framework, knowing full well that policy resulted in treatment of a select few individuals and the denial of treatment of the majority of the population. That rationing mechanism was enshrined in the 2016 HCV Guidance and continues unchanged in the May 2019 HCV Guidance. TDOC continues to prevent the exercise of independent medical judgment by medical providers in the new Guidance. While the raw treatment numbers have trended upward very recently, Defendants continue to cap the number of Class members considered for treatment on a monthly basis, resulting in the continued denial of care for even those, like Named Plaintiffs, who fall into the highest prioritization category for DAA treatment.

Even accepting *arguendo* Defendants' position that the May 2019 HCV Guidance provides for a constitutionally acceptable level of medical care, class-wide injunctive relief would nevertheless be appropriate because Defendants, in practice, do not provide even that minimal level of treatment in accordance with the policy. *See* **Joint Exhs. 1-37** (meeting minutes) and **Plts' Exh. 84** (TDOC vs. CoreCivic); testimony of **Named Plaintiffs Atkins**, **Gooch**, **Rollins** and **Proffitt**; and **Second Supplemental Expert Report of Dr. Zhi Yao**, p. 1 ("Another concern is that, even though the HCV guideline was updated, the TDOC providers are not exactly following the policies they created (according to their 2019 meeting minutes).").  At a minimum, the evidence at trial will show that class-wide injunctive relief requiring TDOC to follow its own policy is both necessary and appropriate. *Cf Buffkin*, at \*9 ("However, to address the acknowledged issues with the current policy — including the fact that the policy might be construed to prohibit or prevent doctors from administering DAAs to any prisoner with HCV whose FibroSure score is below F2 — this court will enjoin Policy #CP-7 in its entirety.").

For the foregoing reasons, Plaintiffs request that the Court enter comprehensive injunctive relief addressing the following topics:

- Medical testing sufficient to ascertain the identity of all Class members;

- Prospective opt-out HCV testing at intake;

- Treatment schedule for current, untreated Class members and prospective treatment schedule for future Class members;

- Patient and medical provider education.

Alternatively, Plaintiffs request that the Court enjoin Defendants' continued use of the May 2019 HCV Guidance and appoint a special master or other neutral party, who will submit a proposed Class-wide testing and treatment schedule for the Court's approval and monitor Defendants' compliance with the final order.

## CONCLUSION

For the reasons set forth herein, Plaintiffs, on behalf of themselves and the Class, respectfully ask the Court to enter judgment in their favor on their Eighth Amendment claim and award Plaintiffs the declaratory and injunctive relief requested. Plaintiffs reserve the issue of their fees and costs.

Dated: July 12, 2019

Respectfully submitted,

/s/ Karla M. Campbell
James G. Stranch, III (BPR 2542)
Karla M. Campbell (BPR 27132)
Callie K. Jennings (BPR 35198)
BRANSTETTER, STRANCH
   & JENNINGS, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Phone: (615) 254-8801
Fax: (615) 255-5419
karlac@bsjfirm.com

Thomas H. Castelli (BPR 24849)
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF TENNESEEE
P.O. Box 120160
Nashville, Tennessee 37212
Phone:  (615) 320-7142
Fax:  (615) 691-7219
tcastelli@aclu-tn.org

Stacie L. Price (BPR 030625)
Sherry A. Wilds (BPR 021756)
DISABILITY RIGHTS TENNESSEE
2 International Plaza, Suite 825
Nashville, Tennessee 37217
Phone: (615) 298-1080
staciep@disabilityrightstn.org
sherryw@disabilityrightstn.org

## CERTIFICATE OF SERVICE

I certify that on July 12, 2019, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF and served via the Court's Electronic Filing System to:

Pamela S. Lorch
Tennessee Attorney General's Office
P.O. Box 20207
Nashville, TN 37202-0207

Steve Hart
Tennessee Attorney General's Office
P.O. Box 20207
Nashville, TN 37202-0207

Jim Newsom
Matthew Dowty
Tennessee Attorney General's Office
40 South Main Street, Suite 1014
Memphis, TN  38103-1877

*Attorneys for Defendants*

/s/ Karla M. Campbell
Karla M. Campbell